IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH PHIILLIPS, FL-1951,                )
    Petitioner,                              )
                                                  )
    v.                                              )  2:09-cv-1159
                                                  )
SUPERINTENDENT LOCKETT, et al.,    )
    Respondents.                          )

Report and Recommendation

I. Recommendation:

It is respectfully recommended that the petition of Joseph Phillips for a writ of habeas corpus be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

II. Report:

Joseph Phillips, an inmate at the State Correctional Institution at Greensburg has presented a petition for a writ of habeas corpus which he has been granted leave to prosecute in forma pauperis. Phillips is currently serving a 17 ½ to 35 year sentence imposed following his conviction, by a jury of criminal attempt (homicide), aggravated assault and a firearms violation at No. CC 200202512 in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on July 11, 2003.[1]

---

[1] See: Petition at ¶¶ 1-6 and p.47 of the answer. All references in this report and recommendation to record page number, unless otherwise indicated, refer to the Bates page numbering of the answer of the Commonwealth.

1

A notice of appeal to the Superior Court was filed on August 6, 2003 in which the questions presented were:

1. Was the verdict against the sufficiency of the evidence?

2. Was the verdict against the weight of the evidence?

3. Did the trial court err in its charge as to appellant's contention that the shooting was accidental in nature?

4. Was the appellant denied the effective assistance of trial counsel?[2]

On July 20, 2004, the Superior Court affirmed the judgment of sentence.[3]

A petition for allowance of appeal to the Pennsylvania Supreme Court was filed and leave to appeal was denied on December 22, 2004.[4]

On October 6, 2005, Phillips submitted a post-conviction petition[5]. Following a hearing, on March 27, 2007, the court granted, the petition, vacated the judgment of sentence and ordered a new trial.[6] The Commonwealth filed a notice of appeal and on February 8, 2008, the Pennsylvania Superior Court reversed the grant of post-conviction relief and reinstated the judgment of sentence.[7] On May 8, 2008, Phillips filed a petition for allowance of appeal in which the sole issue was:

---

[2] See: Answer at p.80.

[3] See: Answer at pp.124-136.

[4] See: Answer at p.140.

[5] See: Answer at pp. 141-165, 202-222.

[6] See: Answer at p. 254.

[7] See: Answer at pp. 403-413.

> [D]id the Superior Court err in denying en banc reargument or reconsideration since the trial court correctly granted petitioner's PCRA petition and granted him a new trial since the victim, Mark Fisher, submitted two affidavits indicating that he initiated a struggle with petitioner, attacked petitioner a third time. During the third attack the gun accidentally discharged and Fisher's recollection is that the shots were accidentally, and not intentionally fired - petitioner did not attempt to shoot Mr. Fisher; Mr. Fisher provided similar testimony at the PCRA hearing. This is consistent with the petitioner and Ms. Walker's testimony at trial, and if the jury had heard this testimony from the victim it would surely have changed the outcome of the trial and therefore the trial court properly granted petitioner a new trial. Moreover, the Superior Court misapprehended the issue raised since victim Fisher's PCRA hearing testimony was not true recantation evidence, but merely an explanation and elucidation of his trial testimony, and the Superior Court panel erred in concluding that a different verdict would not have been likely on retrial.[8]

On August 27, 2008 leave to appeal was denied.[9]

The instant petition was executed on August 25, 2009, and in it Phillips contends he is entitled to relief on the following grounds:

> 1. Petitioner's U.S. Constitutional right to due process was denied due to counsel's ineffectiveness. Trial counsel provided ineffective assistance of counsel when he failed to: (1) object to the trial court's deficient jury instruction on the defense of accident; and (2) failed to provide the trial court with written points for charge on said defenses.
>
> 2. Both the Superior Court and Supreme Court violated petitioner's U.S. Constitutional right to due process when they overturned the lower court's grant of a new trial. Petitioner was granted a new trial by the PCRA court on the grounds that had the jury heard the after discovered evidence it could have reached a different verdict. The Commonwealth appealed and the Superior Court erred in reversing the lower court based largely on credibility, which was outside their standard of review.[10]

It is provided in 28 U.S.C. §2254(b) that:

---

[8] See: Answer at p.463.

[9] See: Answer at p. 502.

[10] See: Petition at ¶ 12.

3

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a

question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In <u>Hameen v. Delaware</u>, 212 F.3d 226, 235 (3d Cir. 2000), the Court determined:

> The Court in <u>Williams v. Taylor</u> held that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, further held that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Thus, under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." The Court in <u>Williams v. Taylor</u> made it clear that the "contrary to" and "unreasonable application" clauses have independent meaning.

In the instant case, the Commonwealth contends that the petitioner has failed to exhaust the available state court remedies on the two issues he seeks to raise here, and for this reason, his petition should be dismissed[11] Specifically, while conceding that the substance of the issues which the petitioner seeks to raise here were presented to the state appellate courts, those issues were not raised in a manner which would have placed those courts on notice that federal issues were being invoked. See: <u>Keller v. Larkins</u>, 251 F.3d 408 (3d Cir.2001).

In his brief on direct appeal, the petitioner claimed that trial counsel was ineffective,

---

[11] See: Text answer of the Commonwealth at pp.14-16. The Commonwealth also contends that the instant petition has been timely filed (Text answer at p.13). Although we do not agree with this latter conclusion, since the Commonwealth has effectively waived the timeliness argument, it need not be addressed here.

5

> [I]n particular, trial counsel did not attempt to secure the services of an expert who could provide evidence that the discharge of the weapon was consistent with the Appellant's testimony that the same was accidental in nature. Additional, counsel requested a charge on the defense of that the harm to the Victim was accidental in nature and then failed to provide a specific request as to the nature of the charge nor was objection offered to the inadequate charge given by the trial court.[12]

Thus, while it would appear that the petitioner failed to raise the issues which he seeks to raise here in a federal context, it is also true that he did present the substance of those issues to the appellate courts of Pennsylvania for their consideration in the first instance. For this reason, and out of an abundance of caution, they will be considered here.

The background to this prosecution is set forth in the memorandum of the Superior Court when reviewing the direct appeal:

> On October 28, 2001, at approximately 4:00 a.m., Appellant and his girlfriend, Tamika Walker, were leaving the after-hours club "Lolo club" located in the Strip District of Pittsburgh. After they exited the club, they were approached by the victim Mark Fisher, who began arguing with Walker. Appellant and Walker proceeded in the direction of Appellant's vehicle, and despite pleas from Fisher's friends, including Lucille Szernics and Shawna Jenkins, that he leave Appellant and Walker alone, Fisher followed Appellant and Walker to their vehicle. Upon reaching the vehicle, Appellant retrieved a gun from the driver's side of the vehicle, then walked around to the passenger side where Fisher was standing. Appellant struck Fisher twice on the head with the butt of the gun. As Fisher lay on the grounds, he was shot six times in the chest, hip, and right leg, his injuries requiring amputation of his right leg. Appellant then fled the scene, but later was apprehended and [criminally] charged...[13]

The petitioner's first contention is that trial counsel was ineffective for failing to object to the trial court's jury instruction regarding petitioner's theory that the incident was the result of an accident and that trial counsel failed to provide the court with an appropriate instruction on the

---

[12] See: Answer at p.85.

[13] See: Answer at pp. 124-125.

6

accident defense.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel.  First, the petitioner must show that counsel's performance was deficient.  This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000).  Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052.  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong.  See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987), cert. denied, 484 U.S. 863 (1987).  As a result, if a petitioner fails on either prong, he loses.  Holladay v. Haley, 209 F.3d 1243, 1248 (11th 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.")(citation omitted);  Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.")

The basis of the defense at trial, as summarized by the Superior Court, was the

petitioner's testimony that:

> after [the petitioner] hit the victim twice with the gun and was returning to the driver's side of the car, the victim grabbed him and a struggle ensued between the two men, each wrestling for control of the gun.  Appellant testified that the gun discharged accidentally during the struggle.  Tamika Walker corroborated Appellant's version of the events.[14]

However, the Superior Court went on to observe that the prosecution presented evidence of several witnesses who testified that following the altercation and while the victim was lying on the grounds, the petitioner pointed the gun at the him and the gun discharged five or six times thereby creating a credibility issue for resolution by the fact-finder.[15]  This summation of the evidence is clearly supported by the trial record. As a result, the Superior Court concluded that "the Commonwealth sufficiently disproved Appellant's claim that he acted in self-defense..."[16]

The record demonstrates that the trial court did instruct the jury on the accident defense. Specifically, the court instructed the jury to consider the conflicting evidence and attempt to reconcile it (TT.271-272). The jury was also instructed on the defense of justifiable employed of force in self-defense and accident. (TT. 279-282).

When called upon to review the instructions of the court, those instructions must be reviewed as a whole and not in isolated segments. Estelle v. McGuire, 502 U.S. 62 (1991); Riley v. Taylor, 277 F.3d 261 (3d Cir.2001)(en banc). Because it would appear that the instructions as a whole correctly informed the jury of the defense of accident, counsel cannot be said to have

---

[14] See: Answer at p.127.

[15] See: Answer at pp. 127-128.

[16] See: Answer at p.131.  However, the Court did not address the substance of the petitioner's claims finding that such matters are more appropriately raised in Pennsylvania on collateral review, (Answer at p.134) and as a result are procedurally defaulted here..

been deficient in regard to this matter.

The other issue which the petitioner seeks to raise here is that the Superior Court erred in reversing the grant of a new trial on the petitioner's claim of after discovered evidence. Specifically, in this regard, the petitioner contends that in view of the victim's recantation testimony at the PCRA hearing it was constitutionally defective to deny his claim to entitlement to a new trial. At the PCRA hearing Fisher was called as a witness and testified that he had discussed his proposed testimony with his own attorney and was advised by the court of the possibility of being prosecuted for perjury and that despite those admonitions he still desired to testify.[17] Fisher testified at the PCRA hearing that at trial, he testified that he could not remember the shooting incident; that with the passage of time his memory improved; that he and the petitioner were in a tussle and that he believed the gun was accidentally discharged and that he was unaware of the events having been captured on video tape.[18]

At trial, the eyewitnesses testified that the petitioner fired at the victim six times; the petitioner testified that the shooting was the result of an accidental discharge of the weapon and the victim testified that he had no recollection of the events. Subsequently, the victim claims to have regained his memory and testified that he and the petitioner were fighting, as attested to by all trial witnesses, and that it was his belief that the shooting was accidental. Had the gun been discharged one time this after discovered evidence might have some credibility, but in light of the trial testimony that the weapon was discharged several times, the witnesses observed the petitioner aiming at the victim, and the petitioner's subsequent flights, it defies credibility to

---

[17] See: Answer at pp.336-344.

[18] Id. at pp.346-363, 366.

9

conclude that the events arose accidentally. As the Superior Court summarized:

> Indeed, even if the fact finder were to accept as true every "fact" the witness [Fisher] now assets, the portions of the incident he purports to remember do not dispel the conclusion underlying Phillips's conviction that the defendant shot the victim purposefully rather than by accident. Indeed, Fisher remembers only that at some point he and Phillips struggled and that Phillips's gun discharged perhaps twice... Given the undisputed evidence that Phillips shot him six to seven times, Fisher's inability to recall any more than two shots is insurmountable; while the jurors impaneled for a new trial might find that one or even two shots discharged by accident, they would be hard-pressed to reach the same conclusion about six or seven. Fisher's statement of opinion to the contrary... does nothing to cure so substantial a gap in his recollections. Accordingly, Fisher's recantation testimony offers little prospect of a different verdict upon retrial.[19]

While it might appear that the Superior Court engaged in some degree of fact-finding, we likewise conclude that even if presented at trial this testimony, in light of all the other testimony of record, would not have resulted in the conviction of an innocent individual. To provide a basis for relief claims of newly discovered evidence must demonstrate constitutional violations independent of any claim of actual innocence. Herrera v. Collins, 506 U.S. 390 (1993). No such claim is made here other than an allegation of actual innocence based on the rather incredible recall of events by the victim. As the Court stated in Coogan v. McCaughtry, 958 F.2d 793, 801 (7th Cir.1992),

> Where the "newly discovered evidence" consists of witness recantations of trial testimony or confessions by others, of the crime, most courts decline to consider it in the absence of any showing that the prosecution knowingly proffered false testimony, or failed to disclose exculpatory evidence, or that petitioner's counsel was ineffective.

No such showing is made here.

In summary, we conclude that although Phillips failed to raise his federal claims in state

---

[19] See: Answer at pp. 410-411.

court and therefore cannot now raise them here, even if he had done so, they provide no basis for relief since there is no demonstration that the state courts improperly applied federal law as determined by the United States Supreme Court. Specifically, the trial instructions as a whole, clearly set forth the defense's theory of the case and there was no basis upon which a new trial should have been awarded based on the recanted testimony of the victim.

Accordingly, it is recommended that the petition of Joseph Phillips for a writ of habeas corpus be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, that a certificate of appealability be denied.

Within the time limits set forth in the attached notice of electronic filing, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                                                     Respectfully submitted,

                                                     s/Robert C. Mitchell,
Entered: November 25, 2009                    United States Magistrate Judge