IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH PHILLIPS,            )
       Petitioner,      )
                            )
vs.                         )   Civil Action No. 09-1159
                            )
SUPERINTENDENT MELVIN LOCKETT, )
SCI Greensburg, et al.,     )
       Respondent/s.    )

## MEMORANDUM ORDER

Petitioner, Joseph Phillips, brought this habeas corpus action pursuant to 28 U.S.C. § 2254, challenging his conviction, following a jury trial, on charges of criminal attempt (homicide), aggravated assault and a firearms violation at No. CC 200202512 in the Court of Common Pleas of Allegheny County, Pennsylvania. On November 25, 2009, a United States Magistrate Judge filed a Report and Recommendation, recommending that the petition be dismissed and that a certificate of appealability be denied. Petitioner was granted until December 14, 2009 to file objections to the Report and Recommendation (Docket No. 14).

On December 16, 2009, Petitioner filed a motion for extension of time in which to file objections (Docket No. 16). That same day, the motion was granted and Petitioner was granted until January 14, 2010 to file his objections. However, no objections were filed. On January 20, 2010, the Court entered an order adopting the Report and Recommendation and dismissing the petition (Docket No. 17).

On January 25, 2010, Petitioner submitted a motion for extension of time in which to file objections, in which he sought leave to file his objections by January 27, 2010 (Docket No. 18). Before the Court could rule on this motion, Petitioner filed his objections, which were received

by the Court on January 29, 2010 (Docket No. 19). An order was entered vacating the order adopting the Report and Recommendation (Docket No. 20) and Respondents were given until February 12, 2010 to respond to the objections. On February 3, 2010, Respondents filed a response to the objections.

In his objections, Petitioner contends that the victim was shot only three times, and not six times, thereby further supporting his version of events, in which he and the victim struggled over the gun and it went off accidentally. He has attached to this objections a copy of the victim's medical report that lists three wounds. (Docket No. 19 Ex. A.)

Respondents contend that the record has not been misrepresented. They cite the following places in the record to demonstrate that the victim was, in fact, shot six times by Petitioner: 1) the victim lifted his shirt at trial and pointed out to the jury scars that still remained from two gunshot wounds in his torso, and an additional gunshot wound at his waist, and the victim then lifted his pant leg to show that his right leg had been amputated below the knee due to permanent injuries from additional gunshots to his leg (T.T. 24-25); 2) Michael Banaszak, a security guard at the club where the shooting occurred, testified that he heard the gun being shot five or six times (T.T. 58, 64); 3) Lucille Czernics, a friend of the victim, testified that she also heard the gun being fired six to seven times in total (T.T. 82); 4) the police and forensics experts testified that six nine-millimeter shell casings, all shot by the same gun, were recovered from the crime scene (T.T. 75, 96-97, 100-04, 115); and 5) even Petitioner, during his trial testimony, stated that he believed the gun went off five or six times, two to three times as he and the victim struggled for the gun while standing and "about three" more times after they fell to the sidewalk (T.T. 184).

Respondents further point out that the exhibit Petitioner has submitted does not prove that the victim was shot only three times. First, the document is not authenticated in any way; it does not include the name of the institution, nor the doctor, that treated the victim. It also does not state, specifically, that the victim was being treated for gunshot wounds; it merely lists three open wounds suffered by the victim.

Second, they argue that, even if this document were found to be authentic, it does not conclusively show that the victim was shot only three times. Rather it is not a complete document, as it is labeled "Page 9" at the top of the document, but Petitioner has attached only a single page. It is unclear how many pages this document originally included. Additional wounds suffered by the victim may have been noted on the missing pages.

Respondents contend that, in order to believe this incomplete, unauthenticated document and Petitioner's current contention that the gun was shot only three times, this Court would be required to misbelieve the overwhelming testimony and evidence presented at trial, including the victim's scars and Petitioner's own testimony.

Furthermore, Respondents argue that Petitioner cannot show that, even if he shot the victim only three times, rather than six, that it would have altered the outcome of his trial or the appellate courts' opinions, in any way. They concede that Petitioner is correct in his statement that the Commonwealth had argued that, due to the number of gunshots, Petitioner's accidental shooting theory could not be correct. However, they argue that the Commonwealth's argument is correct, even if the number of gunshots was only three, because the Commonwealth had additional evidence to show that Petitioner's accidental shooting theory was not correct.

Specifically, Petitioner claimed that he was holding the handle of the gun during his fight

3

with the victim, and that the victim grabbed the barrel of the gun and pulled it, which caused the gun to accidentally discharge because Petitioner's finger was on the trigger. The Commonwealth's firearms expert testified that if this had occurred, the gun may have fired once, accidentally, but would have immediately jammed because the victim's hand would have prevented the next cartridge from automatically loading into the chamber. (T.T. 224-26.) Therefore, there was no way the gun could have accidentally fired more than one time, whether the assertion is that the gun was fired three or six times in succession, without someone manually clearing the jam so that the next cartridge could be chambered for fire. Therefore, they contend that Petitioner's accidental shooting theory could not be correct.

Additionally, Respondents note that there was other evidence at trial that tended to show that Petitioner's accidental shooting version of events was not correct. Commonwealth witnesses Shawna Jenkins and Michael Banazsak testified that the victim did not have his hand on the gun when it fired. (T.T. 45, 62-64, 66.) Shawna Jenkins also testified that the victim was actually lying prostrate on the ground at the time that Petitioner stood over the victim and shot him and that Petitioner was standing a few feet away from the victim as he shot the victim, close enough to shoot the victim at close range, but far enough away to be out of the victim's reaching distance. (T.T. 45.) The Commonwealth's testimonial evidence was supported at trial by a surveillance video that recorded the shooting. (T.T. 120-21.) Though the video did not show the entire incident due to the angle and because it was a stop-action camera, the video did clearly show the victim lying prostrate on the ground while Petitioner stood a few feet away, shooting in the direction that the victim was lying. See Commonwealth's Answer to Petition for Writ of Habeas Corpus (Docket No. 13), exhibits 2(a) through (e), attached to the back of

Commonwealth Ex. 20.

Finally, there was also testimony from several witnesses of Petitioner's "bravado" after the shooting. Shawna Jenkins and Lucille Czernics both stated that Petitioner challenged the assembling crowd by saying "Who's next?" and "Who wants this? Who wants some more?" (T.T. 42, 82.) Respondents contend that the appellate courts did not misrepresent the record when they stated that the victim had been shot six times, and even if the victim had not been shot six times, the courts' determination that the victim's new testimony at Petitioner's PCRA hearing would not have altered the outcome of trial was supported by all of the evidence at trial that overwhelmingly showed that Petitioner did not shoot the victim accidentally.

Having reviewed the submissions, the Court finds Petitioner's objections to be without merit. The record overwhelmingly supports the Commonwealth's contention that the victim was shot six times and not three times. Petitioner's attempt to challenge this fact not only flies in the face of all the testimony and evidence, but also is undermined by his own sworn testimony at trial. The medical record may not present a complete picture, as it is only one page of a multiple-page document. Moreover, the record further negates Petitioner's accidental shooting theory, even if only three shots were fired. The Commonwealth's firearms expert testified that if the shooting occurred in the way Petitioner described, only one shot would have gone off accidentally before the gun jammed. In addition, witnesses testified that Petitioner was standing over the victim, close enough to shoot at close range but not close enough for the victim to grab the gun. This version of events was further supported by a surveillance video that recorded the shooting. Finally, witnesses testified that Petitioner challenged the crowd with "bravado" after the shooting, further undermining his accidental shooting theory.

AND NOW, this 5th day of February, 2010,

IT IS ORDERED that the petition for a writ of habeas corpus filed by petitioner Joseph Phillips (Docket No. 6) is dismissed and a certificate of appealability is denied. The Report and Recommendation dated November 25, 2009 (Docket No. 14) is adopted, as modified herein.

<u>/s/ Joy Flowers Conti</u>
Joy Flowers Conti
United States District Judge

cc: Joseph Phillips
FL-1951
SCI Greensburg
165 SCI Lane
Greensburg, PA 15601